```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**TONY KEITH RICHARDSON,**

       Plaintiff,

v.                                    Civil Action No: 2:14-13354

**CAROLYN W. COLVIN,**
**Commissioner, Social Security**
**Administration,**

       Defendant.

## MEMORANDUM OPINION & ORDER

The plaintiff, Tony Keith Richardson, instituted this action under 42 U.S.C. § 405(g) on March 27, 2014, seeking judicial review of the Commissioner's final decision denying his application for disability insurance benefits.  Richardson and the Commissioner have each moved for judgment on the pleadings.  By standing order this action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, who filed her Proposed Findings and Recommendation ("PF&R") on May 18, 2015.  The PF&R recommends that the court deny Richardson's motion, grant the Commissioner's motion, affirm the Commissioner's decision, and dismiss this case.  Richardson filed three objections on June 1, 2015; the court will assess each under a de novo standard.  28 U.S.C. § 636(b)(1)(C).

First, Richardson asserts that the administrative law judge ("ALJ") failed to properly observe the "treating physician rule" when assessing the opinion of Dr. Matthew Ranson.

Under the treating physician rule, an ALJ must generally give more weight to the medical opinions of a claimant's treating physician when determining whether a claimant is disabled. See 20 C.F.R. § 416.927(c); Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011). In fact, opinions concerning the "nature and severity" of a claimant's impairments are to be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 416.927(c)(2).

Even if a treating physician's opinion is ultimately adjudged not to be entitled to controlling weight, our court of appeals has explained, and the magistrate judge observed, that "the value of the opinion must be weighed and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a

2

whole[,] and (6) the specialization of the treating physician." Burch v. Apfel, 9 F. App'x 255, 259–60 (4th Cir. 2001) (citing 20 C.F.R. § 404.1527).

In this case, Richardson's treating physician, Dr. Ranson, completed a Medical Source Statement of Ability to do Work-Related Activities (the "Source Statement"). The Source Statement is essentially a fillable form that prompts the physician to rate or characterize the extent to which the claimant's impairments manifest limitations in exertional and postural abilities, plus tolerance to a variety of environmental factors. In it Dr. Ranson opined that Richardson was capable of occasionally and frequently lifting and/or carrying 10 pounds, and capable of standing and/or walking for at least 2 hours in an 8-hour workday, provided that he periodically alternated sitting and standing to relieve pain or discomfort. Dr. Ranson also checked a box on the Source Statement indicating that Richardson had pushing and pulling limitations; but he did not specify whether the limitations manifested in the upper or lower extremities and he did not describe the extent of the limitations, as directed by the form. And when prompted by the form to explain what medical/clinical findings supported those exertional limitations, Dr. Ranson stated only "MRI findings & physical [illegible]."

3

As for Richardson's postural limitations, Dr. Ranson stated that he could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, kneel, crouch, and stoop; but never crawl.  Dr. Ranson also noted that Richardson's ability to reach in all directions was limited but that he could do so occasionally.  Finally, Dr. Ranson also opined that Richardson should limit his exposure to humidity/wetness, hazards, and vibrations, but provided no explanation of the medical or clinical findings that supported that recommendation.

The ALJ recounted the contents of Dr. Ranson's Source Statement, but gave it "little weight," finding it simply "inconsistent with other evidence of record."  As the magistrate judge rightly observed in her PF&R, such blithe consideration of a treating physician's opinion is woefully inadequate and plainly inconsistent with the treating physician rule.  Yet while the ALJ failed to properly weigh Dr. Ranson's opinion, its potential impact was fully explored and accounted for during questioning with the vocational expert.  During Richardson's hearing, the ALJ questioned the vocational expert as follows:

> Q: "What I'd like you to do now, Mr. Tanzey, is to assume an individual the claimant's age, education, and work history, who can perform work at the sedentary level who can stand and walk for two hours and sit for six hours in an eight-hour workday; who requires the option to alternate sitting and standing at will; who can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; who can occasionally balance, stoop,

4

> kneel, and crouch, but never crawl; and who must avoid concentrated -- who can occasionally -- also can occasionally reach; and who must avoid concentrated exposure to vibration, humidity, wetness and hazards such as moving machinery and unprotected heights. Would there be jobs that an individual with these limitations could perform?
>
> A: Yes, sir. Your Honor, before I give those positions -- [. . .] the Dictionary of Occupational Titles does not factor in a sit-stand option, and my testimony will be based upon my personal job analysis as well as reviewing and studying publications by other vocational experts. Your honor, with your hypothetical number two, all three positions that I mentioned [those being, stationary guard, information clerk, and shipping and receiving router] in the sedentary classification would remain with hypothetical number two."
>
> Q: If I added to that, that it also would be a job that would accommodate the use of a handheld assistive device, namely, a cane, what would your answer be to that?
>
> A: Your honor, all three of those positions would still remain.

Richardson's attorney thereafter followed up with his own questions, producing this colloquy:

> Q: Let's take it back to the first hypothetical, and then we'll interpose on top of the hypothetical that the individual could only occasionally lift up to 10 pounds. . . . The individual's ability to push, pull in all extremities is affected, but the individual could not reach in all directions similar to the PRFCA by Dr. Ranson. What would that do, if anything, to the jobs you listed in number one?
>
> A. All three of the positions in the light [exertion category] would be eliminated; however, all three of the positions in the sedentary would remain.

In other words, even when the vocational expert was asked to assume the truth of every limitation Dr. Ranson identified, he

5

was still able to conclude that Richardson was capable of working. The ALJ noted this in his decision, observing that "the attorney and I each gave [the vocational expert] hypothetical questions with the residual functional capacity based on [Dr. Ranson's Source Statement]; the vocational expert was still able to identify jobs such an individual could perform."

In sum, assuming Dr. Ranson's opinion had been given controlling weight -- as it implicitly was during the hypothetical colloquies -- the vocational expert would nevertheless have concluded that Richardson retained the ability to work and that he was therefore not disabled. Accordingly, any failure by the ALJ to properly weigh Dr. Ranson's opinion was harmless, as the magistrate judge properly concluded.

*

The plaintiff's second objection must be rejected for the same reason. Richardson complains that the limitations identified by Dr. Ranson, combined with the fact that he was nearly fifty years old at the time of the ALJ's decision, necessarily dictated a finding that he was disabled. For one thing, Richardson didn't make that argument to the magistrate judge. But even if he had, the vocational expert testified that there were still jobs available for a hypothetical individual of

6

"the claimant's age" with each of the limitations identified in Dr. Ranson's Source Statement. As a result, Richardson's second objection lacks merit.

*

Finally, Richardson objects to the ALJ's conclusion that his severe chronic back pain did not meet or exceed the criteria listed in 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A (otherwise known as "Listing 1.04").

"The Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability. A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) (internal quotation marks and citation omitted). As relevant here, a "claimant is entitled to a conclusive presumption that he is disabled if he can show that his disorder results in compromise of a nerve root or the spinal cord." Id. (citing Listing 1.04). The claimant contends that he meets the criteria of § 1.04A. The § 1.04A "criteria a claimant must meet or equal to merit a conclusive presumption of disability arising out of compromise of a nerve root or the spinal cord" are:

7

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Id. (quoting 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A (some internal alterations omitted)).

The ALJ observed that Richardson was suffering from lower back pain potentially brought on by degenerative disc disease, protruding or herniated discs, and stenosis. He also noted that Richardson had a positive straight-leg raising test. But the ALJ also pointed out that two nerve conduction studies of Richardson's lower extremities came back normal or "within normal limits," that multiple doctors over time observed Richardson's extremities were strong and without atrophy, and that straight-leg raising tests administered to Richardson on other occasions had been negative. While the claimant need not have had all of the § 1.04A characteristics simultaneously, he is not shown to have had at least reflex loss at any time.[1]

Indeed, as the magistrate judge noted, even Dr. Werthammer, the neurosurgeon who diagnosed Richardson with

---

[1] In particular, the court notes the claimant's visit to the Boone County Emergency Department on April 16, 2012. The record indicates his reflexes were within normal limits on that date. (See Admin. Rec. at 1098).

8

diminished sensation and slightly decreased strength in the right leg, described his "muscle bulk and tone" as normal and did not identify any reflex loss. Consequently, the magistrate judge's recommendation to affirm the ALJ's finding that Richardson's condition did not meet or exceed the criteria in Listing 1.04A is well taken.

In fact, it's not even clear that Richardson objects to the magistrate judge's recommendation so much as the manner in which she reached it. He "objects to Magistrate Eifert's analysis of the alleged effects of a Herniated Disc found on page 43 of the [PF&R]," and in particular the source cited in footnote 2, complaining that the magistrate improperly relied on materials outside the record. See Pl.'s Objections at 3. In that footnote, the magistrate judge cited to information contained in the National Institute of Health's National Library of Medicine for the proposition that herniated discs and spinal stenosis do not necessarily produce accompanying symptoms. PF&R at 43 n.2. The magistrate judge did not rely on the cited material to conclude that those conditions can never meet or exceed the criteria in Listing 1.04A, but rather to demonstrate that the presence of those diagnoses alone is not sufficient to demonstrate nerve root compression. See PF&R at 43-44 ("Claimant's MRI findings, alone, do not establish nerve root

9

compression of sufficient severity to meet Listing 1.04A."). Ultimately, however, the magistrate judge concluded that the ALJ's decision with respect to Listing 1.04A was justified because Richardson did not establish all four of the symptoms of nerve compression required by that Listing. See PF&R at 45. Accordingly, the plaintiff's third objection is overruled.

*

For the foregoing reasons, and having reviewed de novo those portions of the record to which objection is made, the court ORDERS:

1. That the PF&R be, and hereby is, adopted and incorporated herein;

2. That the Commissioner's final decision be, and hereby is, affirmed;

3. That judgment be, and hereby is, granted in favor of the Commissioner; and

4. That this civil action be, and hereby is, dismissed and stricken from the docket.

**The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.**

DATED: August 12, 2015

John T. Copenhaver, Jr.
United States District Judge